**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-CV-60069-DAMIAN/STRAUSS**

**HALFORD WARLICK**,

Plaintiff,

v.

**NOVA SOUTHEASTERN UNIVERSITY, INC.**,

Defendant.
_______________________________/

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT AND PLAINTIFF'S CROSS-MOTION FOR SANCTIONS, TO COMPEL A GENUINE CONFERRAL, AND TO SET A PLAINTIFF-PROTECTIVE SCHEDULE**

THIS CAUSE comes before the Court on Plaintiff Halford Warlick's Motion for Leave to File a Fourth Amended Complaint [DE 87] ("Motion for Leave") and Plaintiff's Cross-Motion for Sanctions, to Compel a Genuine Conferral, and to Set a Plaintiff-Protective Schedule [DE 98] ("Motion for Sanctions") (collectively, "the Motions"). The Honorable Melissa Damian has referred the Motions to me for disposition. [DE 102, 105]. I have reviewed the Motions, the responses and replies thereto, and all other pertinent parts of the record. For the following reasons, the Motions are **DENIED**.

BACKGROUND

On December 18, 2025, Plaintiff filed a Complaint in state court. [DE 1-2]. The Complaint was 77 pages long (with an additional 152 pages of exhibits), consisted of 301 paragraphs, and contained 12 counts, bringing claims for Disability Discrimination (under Section 504 of the Rehabilitation Act), violation of Title III of the Americans with Disabilities Act ("ADA"), Retaliation (under the ADA and Rehabilitation Act), Breach of Contract, Breach of Implied

Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Unjust Enrichment, Intentional Interference with a Contractual Relationship, Negligent Supervision, Training and/or Retention, Negligence, Negligent Infliction of Emotional Distress ("NIED"), and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* Defendant removed the case to this Court on January 12, 2026, [DE 1], and filed a motion to dismiss the Complaint on January 19, 2026. [DE 6]. That motion to dismiss argued that the Complaint was a "shotgun pleading," raised standing challenges to Plaintiff's claims for injunctive relief, and raised substantive defects with Plaintiff's contract, breach of implied covenant of good faith, promissory estoppel, tort, and FDUTPA claims. *Id.*

Plaintiff sought, and received, an extension of time to respond to Defendant's motion to dismiss. [DE 8, 9]. On the date his response was due, February 9, 2026, Plaintiff instead filed an Amended Complaint. [DE 16]. The Amended Complaint expanded to 99 pages, 585 paragraphs, and 18 counts. *Id.* The Amended Complaint again brought claims for Disability Discrimination under Section 504 of the Rehabilitation Act, Discrimination under the ADA, Retaliation under the Rehabilitation Act and ADA (now alleged in separate counts), Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Unjust Enrichment, Tortious Interference with Contractual Relationship, FDUTPA, Negligent Retention, Supervision, and Training (now alleged as three separate counts), and NIED. *Id.* It added new claims for Negligent Misrepresentation, Gross Negligence, Intentional Infliction of Emotional Distress ("IIED"), and Breach of Fiduciary Duty. *Id.* In light of the Amended Complaint, Defendant's original motion to dismiss was denied as moot. [DE 18].

On February 23, 2026, Defendant filed a motion to dismiss the Amended Complaint. [DE 23]. This motion to dismiss argued that the Amended Complaint remained a "shotgun

pleading," again challenged Plaintiff's standing to seek injunctive relief under the ADA, and again raised substantive issues regarding his negligence, contract, implied covenant, promissory estoppel, tortious interference, and FDUTPA claims. *Id.* Plaintiff again sought, and received, an extension of time within which to respond to the motion to dismiss. [DE 32, 34]. Before his extended deadline to respond, Plaintiff filed a motion seeking leave to file a second amended complaint, followed by an amended motion to file a corrected second amended complaint. [DE 39, 40]. Defendant opposed this attempt to amend, arguing that the Corrected Second Amended Complaint ("SAC") was still deficient. [DE 47]. Defendant complained that Plaintiff's pattern of responding to each motion dismiss by amending, rather than defending, his pleadings reflected a dilatory motive. *Id.* at 5. And, relatedly, Defendant argued that, while shorter, the SAC still had not remedied many of the defects identified in Defendants' prior motions to dismiss – specifically, its shotgun structure, Article III standing for injunctive relief, and substantive issues with Plaintiff's contract, tort, and fiduciary duty claims. *Id.* at 6-10. In reply, Plaintiff asserted (among other things) that his SAC was no longer a shotgun pleading and addressed Defendant's questions on his contract claims and otherwise resisted Defendant's arguments regarding Plaintiff's tort and FDUTPA claims. [DE 43]. The Court "reluctantly" granted Plaintiff leave to amend, while noting that Defendant's arguments were "well taken." [DE 48]. Specifically, the Court observed that "Plaintiff's pattern of replacing his clearly deeply flawed complaints in response to Defendant's motions to dismiss with amended complaints that hardly seem to improve on the original complaints' flaws" was "troubling" and seemed to imply "a dilatory or even vexatious motive." *Id.* Nevertheless, the Court granted Plaintiff leave to file his SAC because, in light of Rule 15's liberal standard, it "only represent[ed] his second attempt at satisfying federal pleading standards." *Id.*

The SAC was, indeed, shorter than the Amended Complaint. It consisted of 44 pages, 332 paragraphs, and 15 counts. [DE 49]. Again, Plaintiff brought claims for Disability Discrimination (under Section 504), Section 504 Retaliation, ADA Discrimination, ADA Retaliation, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Promissory Estoppel, Unjust Enrichment, FDUTPA, Negligent Misrepresentation, Breach of Fiduciary Duty, Gross Negligence, Negligent Supervision, Negligent Training, and IIED. In other words, it dropped the previous counts for NIED, Tortious Interference with Contractual Relationship, and Negligent Retention. Defendant filed a motion to dismiss the SAC. [DE 51]. Defendant again argued (as it had in its opposition to the motion for leave to amend) that the SAC was still a shotgun pleading, again raised arguments against Plaintiff's standing to pursue injunctive relief, and raised substantive defects with Plaintiff's negligence, fiduciary duty, IIED, promissory estoppel, and FDUTPA claims. *Id.* Plaintiff responded in opposition to the motion to dismiss, arguing that the SAC was not a shotgun pleading and arguing against each of the substantive defects Defendant asserted. [DE 53]. However, on April 13, 2026 – which was the deadline for amending pleadings under the Court's scheduling order [DE 30] – Plaintiff filed a motion for leave to file a Third Amended Complaint ("TAC"). [DE 54]. While that motion did not concede any defect in the SAC, it sought permission to file a TAC within fourteen days of the Court granting (in whole or in part) Defendant's pending motion to dismiss the SAC. *Id.* at 1, 6. Somewhat paradoxically, the motion for leave to amend emphasized that Plaintiff was not asking for "one more try" in the abstract and was identifying the substance of the proposed amendment yet defined that substance as "any potential issues the Court raises in its order on the Motion to Dismiss." *Id.* at 4.

On April 22, 2026, the Court granted Defendant's motion to dismiss the SAC, concluding that the SAC still constituted a shotgun pleading. [DE 61]. The Court simultaneously granted

Plaintiff's motion for leave to amend. *Id.* Because the Court determined that the SAC was an improperly pled shotgun pleading, and because it was giving Plaintiff a further opportunity to amend, the Court declined to further address Defendant's remaining Rule 12(b)(6) arguments. *Id.* at 7. The Court directed Plaintiff to file his TAC by May 6 (i.e., fourteen days after the order – the amount of time Plaintiff had requested in his motion for leave to file the TAC). *Id.* at 8. On April 29 (approximately halfway through this fourteen-day period), Plaintiff sought an extension of time to file his TAC. [DE 62]. The motion relied (for its first three reasons) on the fact that the parties had scheduled mediation for May 5, which could potentially moot the case, narrow the issues, or raise additional issues requiring further inquiry. *Id.* at 1-2. The motion then cited the fact that Plaintiff had been hospitalized on April 29 and "excused" for two days, as well as Plaintiff's "disability-related limitations" limiting Plaintiff's ability to review the proposed pleading under "compressed deadlines." *Id.* at 2. The Court denied the motion for extension of time, noting that the Court had granted Plaintiff the fourteen days he had asked for within which to file an amended complaint, that Plaintiff had had more than sufficient time to confer with counsel on the factual content of his complaint (given that he had filed the initial complaint four months earlier), and that the legal issues Plaintiff and his counsel needed to address had been laid out in Defendant's motion to dismiss the original Complaint three months prior. [DE 63].

Plaintiff filed his TAC on May 6 in accordance with the Court's deadline. [DE 65]. The TAC was reduced to 24 pages and 197 paragraphs. It expanded to eighteen counts but focused on some previously alleged causes of action while jettisoning others. The TAC alleges four separate counts of failure to accommodate disabilities under Section 504 (each seemingly predicated on different needed modifications or accommodations), one count of retaliation under Section 504, two counts seeking injunctive relief under the ADA, five counts for breach of contract (based on

various different contract terms), one count for breach of covenant of good faith and fair dealing, one count for promissory estoppel, one count for unjust enrichment, one count for violation of FDUTPA, one count for negligent misrepresentation, and one count for IIED. *Id.* In other words, it seems to break up discrimination claims and contract claims into multiple counts, retain other quasi-contract and tort counts, while cutting claims of Breach of Fiduciary Duty, Gross Negligence, Negligent Supervision, and Negligent Training. Defendant again moved to dismiss the TAC. [DE 66]. Defendant argued that the TAC remains a shotgun pleading by relying on vague and conclusory allegations and (in places) combines distinct legal theories into single counts. *Id.* It repeated earlier arguments that Plaintiff lacks standing to seek injunctive relief under the ADA, again attacked the sufficiency of Plaintiff's IIED pleading (while arguing that Plaintiff's IIED rationale had shifted), attacked Plaintiff's various FDUTPA and tort theories, argued that various contract claims failed to adequately allege breaches of contract, again argued that Plaintiff had no independent cause of action under the implied covenant of good faith and fair dealing, and argued that Plaintiff had not adequately alleged viable quasi-contract theories. *Id.* Defendant also now asserted defects with the adequacy of Plaintiff's disability discrimination allegations. On May 29, 2026, Plaintiff responded to the motion to dismiss the TAC. [DE 77]. His response argued against Defendant's assertion that the TAC is still a shotgun pleading and sought to counter Defendant's arguments for why Plaintiff's various counts fail under Rule 12(b)(6). *Id.* Much of Plaintiff's response also takes issue with Defendant's argument for dismissal with prejudice – protesting that the Court has never adjudicated the various Rule 12(b)(6) defects Defendant identifies – and alternatively arguing that the Court should grant Plaintiff further leave to amend or that the Court should go back and make the SAC the operative pleading and adjudicate the Rule

12(b)(6) disputes presented there rather than rule on the motion to dismiss the TAC.[1] Defendant's motion to dismiss the TAC remains pending.

After Defendant's reply to the motion to dismiss the TAC had argued (among other things) that Plaintiff could not seek further leave to amend in a response [DE 78], on June 8, 2026, Plaintiff filed a motion for leave to file a Fourth Amended Complaint ("FAC"). [DE 79]. That motion did not attach a proposed FAC but rather sought additional time to file a FAC "that conforms to this Court's repleading directive in [the order dismissing the SAC] and addresses count-specific concerns Defendant raises in its pending Motion to Dismiss." *Id.* at 1. After this motion was fully briefed, on July 17, 2026, Plaintiff filed the instant Motion for Leave, making similar arguments but now attaching a proposed FAC.[2] The proposed FAC re-expands to 36 pages, 209 paragraphs, and 20 counts. [DE 87]. In comparison to the TAC, the proposed FAC drops the two claims for injunctive relief under the ADA, repackages the five breach of contract counts from the TAC into six breach of contract counts, and adds in three separate negligence counts regarding a 2022 laboratory incident. [DE 87-1].

On July 8, 2026, Judge Damian[3] ordered the parties to prepare and file a joint scheduling report by July 22, 2026. [DE 86]. On July 22, at 6:37 p.m., Defendant filed a unilateral scheduling report, claiming that, despite having circulated drafts of a joint scheduling report and joint proposed scheduling order, the parties had not agreed on joint dates and Plaintiff had not agreed

[1] Prior to filing his response to the motion to dismiss, Plaintiff had made a similar request for the Court to reconsider its order dismissing the SAC and go back to adjudicate the Rule 12(b)(6) arguments there. [DE 71, 72]. The Court denied Plaintiff's motion to reconsider (and his "corrected" motion to reconsider). [DE 73, 74].

[2] On September 4, 2026, Plaintiff withdrew [DE 79] his original motion for leave. [DE 116].

[3] The case was re-assigned to Judge Damian on May 29, 2026, after the original presiding District Judge granted Plaintiff's Motion for Recusal, [DE 75], "out of an abundance of caution." [DE 76].

to a joint filing at the time Defendant made its filing. [DE 94]. Plaintiff filed a response with his own description of the parties' communications and cross-moved for sanctions, a "genuine conferral," and entry of his own proposed scheduling order.[4] [DE 95, 98].

## ANALYSIS

### A. Motion for Leave

When a party seeks leave to amend a pleading after the deadline set forth in a court's scheduling order, the party must satisfy both Rule 16(b)(4) and Rule 15(a) of the Federal Rules of Civil Procedure. *See AMG Trade & Distrib. , LLC v. Nissan N. Am., Inc*., 813 F. App'x 403, 408 (11th Cir. 2020). In such a situation, "the plaintiff 'must first demonstrate good cause under Rule 16(b) before [courts] will consider whether amendment is proper under Rule 15(a).'" *Id*. (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)); *see also Lamothe v. Bal Harbour 101 Condo. Ass'n, Inc*., 316 F. App'x 844, 846 (11th Cir. 2008) ("If a motion for leave to amend is filed after the deadline set in a scheduling order issued pursuant to Rule 16 of the Federal Rules of Civil Procedure, the motion is governed first by Rule 16(b)." (citing *Smith v. Sch. Bd. of Orange Cnty*., 487 F.3d 1361, 1366-67 (11th Cir.2007))). Importantly, in most cases (including this case), Rule 16(b)(1) requires the issuance of a scheduling order, and Rule 16(b)(3)(A) requires that the scheduling order "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once a scheduling order is issued, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Smith*, 487 F.3d at 1366 ("[W]here a party's motion to amend is filed after the deadline for

---

[4] In his notice withdrawing his original motion for leave to file a FAC, Plaintiff also withdrew his request for the Court to enter his proposed schedule, deferring to the Court's determination of a schedule once the pending motions are resolved (while not acquiescing to Defendant's proposed schedule). [DE 116] at 2.

such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted."). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation modified).

Under Rule 15, if the time to amend as a matter of course has passed (as it has here), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id.* Courts consider several factors when ruling on a motion for leave to amend including "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009)); *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

Here, the Court's scheduling order, [DE 30], set April 13, 2026, as the deadline for amendment of pleadings.[5] Plaintiff did not file the instant Motion for Leave until July 17, 2026,

[5] The fact that the case was later transferred in May to another District Judge, who requested the parties submit a new scheduling report, does not reset deadlines from the existing scheduling order that had already expired. *See Sexton v. Lopez*, No. 07-CV-2362, 2009 WL 10669719, at *2 n.3 (N.D. Ga. Apr. 13, 2009) ("Despite directing the parties to complete a joint report, the Court did not intend to allow amendment of the scheduling order previously entered in the case to re-start already expired time limitations."), *report and recommendation adopted*, 2009 WL 10672317

more than three months after the deadline for amendment of pleadings. Therefore, Plaintiff must satisfy both Rule 16(b)(4) and Rule 15(a). The Court finds that Plaintiff has not satisfied either.

1. Rule 16

Plaintiff has failed to show good cause for a further extension of the Court's amended pleading deadline because Plaintiff has not demonstrated diligence. As laid out in the Background section above, Plaintiff has already made four attempts (over the course of nearly five months) to articulate the causes of action that he wants to bring and the facts that support those causes of action. In response to Defendant's first two motions to dismiss, Plaintiff filed amended complaints – once as a matter of course and once with leave of court. The Court's deadline to amend pleadings arrived while Defendant's third motion to dismiss (to which Plaintiff responded) was pending. Defendant filed a motion seeking leave to amend on that date – seemingly to preserve his ability to amend in case the Court granted any part of the motion to dismiss his SAC. The Court granted that motion – effectively extending the deadline for amending Plaintiff's pleading – by granting Plaintiff fourteen days from the date of the order granting the motion to dismiss the SAC to file a TAC. Plaintiff essentially presents two reasons for why, despite his supposed diligence, he could not craft a complaint that sufficiently alleges his causes of action by this deadline. Both reasons are unpersuasive.

First, Plaintiff argues that he has established good cause because "every event this amendment answers" occurred after the expiration of the April 13, 2026 amendment deadline. [DE 87] at 7. The events to which Plaintiff refers are the Court's April 22 "structural dismissal"

---

(N.D. Ga. Apr. 30, 2009); *Reddish v. Epoca Corp.*, No. 17-21206-CV, 2023 WL 5831459, at *1 (S.D. Fla. Sept. 7, 2023) (reasoning that plaintiff had failed to prosecute case adequately in part because plaintiff did not take any action to seek relief from or clarify effect of scheduling order entered by prior judge before case reassignment).

of the SAC, Defendant's motion to dismiss Plaintiff's TAC, Defendant's insistence (on June 5) that Plaintiff seek leave to amend by motion, and the re-assignment of this case on May 29. *Id.* The fact that the Court's order dismissing the SAC came after the April 13, 2026 deadline is of little moment. That is because the same order granted Plaintiff's motion for leave to amend and gave him a further deadline within which to file a TAC. So, the real question is why Plaintiff could not file a sufficient pleading by the TAC deadline of May 6 despite diligence. The fact that Defendant insisted that Plaintiff seek leave to file an FAC by separate motion (while Defendant's motion to dismiss the TAC was pending and after Plaintiff had responded in opposition to that motion) does not bear on this question. Nor does the fact that the case was re-assigned to a different district judge have any bearing on whether Plaintiff could have and should have been able to file a sufficient pleading by May 6.

The real crux of Plaintiff's good cause argument, therefore, appears to be that he did not have the benefit of a court ruling on the Rule 12(b)(6) arguments Defendant had raised in its motion to dismiss the SAC (since the Court granted the motion on shotgun pleading grounds without reaching Defendant's other arguments) and that the motion to dismiss the TAC raised new substantive deficiencies that Plaintiff seeks to address through the FAC. However, this argument does not establish good cause, at least for the vast majority of the proposed FAC. By the time Plaintiff sought leave to file his TAC, Defendant had repeatedly raised substantive Rule 12(b)(6) arguments regarding Plaintiff's various attempts to state claims for breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, FDUTPA, IIED, and negligence-based claims (many of which reappear in the motion to dismiss the TAC). Thus, the TAC represented Plaintiff's fourth attempt to account for those alleged deficiencies in either his legal theories or his factual support as much as he thought necessary.

A party acting with diligence, particularly one represented by counsel, should (after several months and with four tries) be able to identify the standards he needs to meet and meet them, with or without specific guidance from the Court on whether his opponent is correct. Plaintiff cites no authority for the proposition that he is entitled to a ruling on the merits of Rule 12(b)(6) arguments that he has seen (and seemingly attempted to address) multiple times before running out of chances to amend.[6] And while the Court's order granting the motion to dismiss the SAC specifically instructed Plaintiff to remedy the structural deficiencies that made his SAC a shotgun pleading, it should have been clear to Plaintiff that his opportunity to file a TAC was also his opportunity to address any of the substantive defects Defendants asserted. Furthermore, Plaintiff's repeated failure to file a comprehensible and properly plead complaint is the precise reason why the Court has not yet rendered a merits ruling on Defendant's Rule 12(b)(6) arguments. The fact that Plaintiff had to craft his TAC without the benefit of a ruling on the merits of Rule 12(b)(6) arguments Defendant had repeatedly raised does not amount to good cause for a further extension of the deadline to amend pleadings, especially when Plaintiff has already spent several months and taxed a significant amount of the Court's and Defendant's resources getting to this point.

Plaintiff argues that some of Defendant's count-specific arguments in its motion to dismiss the TAC are raised there for the first time. Since Plaintiff does not identify the arguments to which he is referring, it is difficult to assess this point without combing through each prior motion to

[6] Plaintiff cites several cases in the Rule 15 context discussing the need to give a plaintiff at least one chance to replead when a court dismisses his complaint as a shotgun pleading and gives him specific instructions on how to remedy the defect. *See* [DE 87] at 5-6 (first citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018); then citing *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021); and then citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355-58 (11th Cir. 2018)). However, as discussed below, none of these cases stands for the proposition that a plaintiff is entitled to a merits ruling on Rule 12(b)(6) arguments and specific instructions on how to remedy failures to state a claim, particularly when that plaintiff has already sought to amend multiple times.

dismiss (and the various complaints to which they respond). And some of those arguments may be appearing for the first time because the TAC is the first time that Plaintiff more clearly delineated – at least to some extent – the distinct bases for his various claims (for example, his failure to accommodate and breach of contract claims). Nevertheless, Plaintiff's proposed FAC is not merely an attempt to account for those new arguments. The most obvious illustration is that the proposed FAC adds three negligence claims (as counts 17, 18, and 19) that were not in the TAC (but seem to have been part of gross negligence counts in the Amended Complaint and SAC). That Plaintiff appears to intend the proposed FAC to add (or add back) new claims or continue to shift theories – none of which are based on any newly discovered facts[7] – reinforces that he has not shown good cause for an extension and did not act with diligence in attempting to meet the prior deadline.

Second, Plaintiff points to his disabilities, compounded by telephone/technology restrictions imposed by his treating physicians, to explain why he could not meet the prior deadline despite diligence. He argues that his disabilities affect his "processing speed, concentration, communication, and decision-making under compressed deadlines," inhibiting his ability to review, give factual input, and make decisions about what allegations to make and what claims to bring. [DE 87] at 8. He further argues that these disabilities were compounded by a two-hour-per-week restriction on using telephones and technology "for weeks at a time" during "the relevant

[7] Defendant's response to the Motion for Leave emphasizes that none of the proposed FAC's revisions reflect newly discovered facts or changes in law. Plaintiff's reply protests that "NSU's demand for 'newly discovered' facts or an 'intervening change in law' [] imports the reconsideration standard into rule 15" and is not a factor from *Foman*. [DE 103] at 2-3. But Plaintiff misses the mark. While newly discovered facts or intervening changes of law may not be required to satisfy Rule 15 – or perhaps even Rule 16 – the fact that his proposed FAC relies on the same facts and circumstances of which he has been aware all along bears on Plaintiff's diligence. In other words, it begs the question of why he could not craft a compliant complaint sufficiently alleging all his intended causes of action by the deadline for filing his TAC.

period." *Id.* Although it is unclear when these restrictions were in place,[8] it appears that Plaintiff is asserting that they existed during the time between the Court's order dismissing the SAC and Plaintiff's deadline to file his TAC fourteen days later. Plaintiff points out that he raised concerns about Plaintiff's disabilities in seeking an extension of the deadline within which to file the TAC. But, notably, that motion made no mention of any restrictions on technology use, attaching only an emergency room note indicating that Plaintiff was seen in the emergency room on April 29 and could return to work or school two days later. [DE 62, 62-2].

These circumstances do not demonstrate good cause. When Plaintiff asked for leave to file a TAC (while the motion to dismiss the SAC was pending), he requested fourteen days from the date of any order granting the motion to dismiss within which to file his amended complaint. [DE 62]. At the time, Plaintiff apparently saw no reason why his disabilities would inhibit him from effectively consulting with counsel and reviewing an amended complaint within fourteen days. The Court granted him exactly what he requested. Moreover, as the Court aptly observed in denying Plaintiff's motion for extension of time, Plaintiff "filed his original Complaint over four months ago. He has had more than enough time to confer with his counsel regarding the factual content of his complaint. And the legal issues that counsel must address in the complaint were first laid out over three months ago in [DE 6] Defendant's Motion to Dismiss the original Complaint." [DE 63]. In other words, all the fact-intensive review and decision-making regarding what claims to bring and what relief to seek should have occurred at the outset of the case before the original complaint was filed, not to mention before the first and second amended complaints were filed. The last events alleged in Plaintiff's various complaints appear to have occurred in December 2023 – two years before Plaintiff filed his initial complaint in state court. In other

[8] The Motion for Leave does not specify when and by whom the restrictions were put in place.

words, Plaintiff and his counsel had copious amounts of time to be well-familiar with what facts could be alleged and what causes of action those facts could support. Plaintiff has not shown why finally organizing those well-known allegations into a compliant pleading following the Court's order dismissing the SAC required more than the fourteen days Plaintiff himself originally asked for. Ultimately, Plaintiff has not been diligent, and he has not established good cause.

2. Rule 15

While the Rule 16 analysis should end the matter, Plaintiff also fails to meet Rule 15's standard. While the Court should freely give leave when justice so requires, the Court need not give leave when there has been undue delay, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. *Foman*, 371 U.S. at 182. Here, for many of the same reasons why Plaintiff has not shown good cause under Rule 16, he has exhibited undue delay, a repeated failure to cure deficiencies, and (possibly) dilatory motive.

To the extent that Plaintiff's TAC is still a shotgun pleading or fails to state a claim based on deficiencies Defendant's prior motions to dismiss have repeatedly raised, Plaintiff has repeatedly failed to cure deficiencies. To be clear, the Court is not currently assessing the merits of Defendant's motion to dismiss the TAC nor finding (or even suggesting) that the TAC is a shotgun pleading or fails to state a claim. The current question is whether Plaintiff should be given leave to file the proposed FAC as a means of mooting the pending motion to dismiss and further addressing arguments in that motion.

If the Court ultimately determines that the TAC remains a shotgun pleading – Defendant argues it is, while Plaintiff argues it is not – then Plaintiff has clearly repeatedly failed to cure deficiencies. Plaintiff's own briefing makes clear that a plaintiff whose complaint is dismissed on shotgun pleading grounds, and with specific instructions to cure that deficiency, is entitled to *one*

opportunity amend. *Vibe Micro*, 878 F.3d at 1295; *Barmapov*, 986 F.3d at 1324-25; *Jackson*, 898 F.3d at 1355-58. Accordingly, if the Court determines that Plaintiff has failed to cure the deficiencies and filed another shotgun pleading, it would not abuse its discretion by dismissing the subsequent shotgun pleading with prejudice. *See Jackson*, 898 F.3d at 1358; *Barmapov*, 986 F.3d at 1326. By contrast, if the Court ultimately determines that the TAC is *not* a shotgun pleading, then it is unclear why Plaintiff would need further leave to amend to continue to address the Court's prior order.

Similarly, many of the Rule 12(b)(6) arguments that Defendant raises against the TAC were raised in Defendant's previous motions to dismiss prior versions of Plaintiff's complaint. So, to the extent those potential defects still remain in the TAC – after multiple attempts to amend – and warrant dismissal, Plaintiff again would have repeatedly failed to remedy deficiencies. For example, Defendant's arguments to dismiss Plaintiff's IIED, implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, FDUTPA, and negligent misrepresentation counts in the TAC are the same as or substantially similar to the arguments Defendant raised in moving to dismiss the same claims in the SAC. Defendant's arguments to dismiss Plaintiff's breach of contract claims in the SAC do not map as neatly onto Defendant's arguments to dismiss Plaintiff's breach of contract claims in the TAC. That is, in part, because Plaintiff has broken up the single breach of contract claim in the SAC that incorporated a multitude of general allegations into five different counts, each based on different policies and procedures (or combinations of policies and procedures). Nevertheless, many of the prior deficiencies Defendant previously raised regarding Plaintiff's breach of contract allegations re-appear in its motion to dismiss the TAC, such as that Plaintiff fails to allege sufficiently specific facts to plausibly establish a breach or fails to sufficiently identify mandatory contractual promises. To the extent these arguments are

meritorious and require dismissal, Defendant's prior motions to dismiss gave Plaintiff fair notice and a meaningful chance to correct those deficiencies by the time Plaintiff filed his TAC. If Plaintiff did not adequately address those deficiencies (or if he created new ones in attempting to re-plead those counts in his TAC), he is not entitled to yet another chance to fix them.

Plaintiff seems to argue that the "repeated-failure" factor can only apply to those defects that the Court has identified and instructed Plaintiff to fix. *See* [DE 87] at 7. However, while it is true that Plaintiff cannot be deemed to have "repeatedly failed" to correct defects of which he had no notice, Plaintiff fails to cite any authority for the proposition that such notice must come from a court order rather than (repeated) arguments in motions to dismiss. *Vibe Micro*, *Barmapov*, and *Jackson*, on which Plaintiff relies in places, discuss a court giving instructions on correcting a shotgun pleading and giving a plaintiff one opportunity to amend. But none of those cases stand for the proposition that a court must give detailed instructions to a plaintiff – especially one who is represented by counsel – on how to remedy Rule 12(b)(6) issues with his claims even after those issues have been raised in repeated motions to dismiss.[9] *Cf. Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (finding no abuse of discretion in denying leave to amend to plaintiffs who had four opportunities to file an adequate pleading even though the court

[9] This case is distinguishable from *Bryant*, 252 F.3d at 1163-64, on which Plaintiff also relies. There, the plaintiff had filed one amended complaint in response to a motion to dismiss. The district court initially denied a motion to dismiss the amended complaint but then reversed course following an interlocutory appeal, dismissing the amended complaint without leave to amend. The Eleventh Circuit found that denying leave to amend was an abuse of discretion because plaintiff had not previously asked for leave to amend and the court (in initially denying the motion to dismiss) had suggested to the plaintiff that the amended complaint had satisfied the pleading requirements. *Id.* Unlike the court in *Bryant*, the Court here has not given Plaintiff any indication that his previous complaints had satisfied his pleading requirements or that Defendant's arguments were non-meritorious. Moreover, here, Plaintiff not only filed one amended complaint "as a matter of course" but has twice sought (and twice received) leave to file further amended complaints before now seeking leave to amend for a third time.

had not ruled on prior motions to dismiss). Indeed, *Jackson*, as Plaintiff cited, stated that "[w]hat matters is function, not form: the key is whether the plaintiff had fair notice of the defects and a meaningful chance to fix them." 898 F.3d at 1358. There, the plaintiffs did not oppose defendants' motion for a more definite statement (effectively acknowledging the defects described in the motion), and the court gave the plaintiffs an opportunity to provide that more definite statement. *Id.* The Eleventh Circuit found that "[a] chance to amend a complaint does not need to come in the form of a dismissal without prejudice or the striking of a portion of the complaint's allegations. It can also be accomplished by ordering the party to file a more definite statement." *Id.* In other words, *Jackson* at least implies that a plaintiff can receive sufficiently fair notice of the defects in his pleading from a defendant's arguments, rather than a court order that specifically approves of those arguments or gives the plaintiff specific instructions. And this idea makes sense because, otherwise, a plaintiff could continuously respond to motions to dismiss with infinite motions seeking leave to amend before the court rules on those motions (as Plaintiff has seemingly done here).

It is true, as Plaintiff argues, that some of the defects alleged in the motion to dismiss the TAC are raised there for the first time. Again, although Plaintiff does not specify which counts or arguments he is referring to, presumably he refers to arguments attacking the sufficiency of his more-specifically pled disability discrimination and failure to accommodate claims, as well as some of the arguments addressing his more specific breach of contract claims. It is not fair to say that Plaintiff has "repeatedly failed" to remedy defects not previously raised. However, the Court must also consider the factor of undue delay. And, again, it is Plaintiff's filing of multiple shotgun complaints and Plaintiff's lack of diligence that has led to the current posture.

In arguing against a finding of undue delay, Plaintiff argues that the "mere passage of time, without anything more, is insufficient reason to deny leave to amend." [DE 87] at 9 (quoting *Bryant*, 252 F.3d at 1163). But the undue delay here is not about the mere passage of time; it is about Plaintiff's apparent "delaying tactics." *Bryant*, 252 F.3d at 1164. Plaintiff filed his latest Motion for Leave with his proposed FAC approximately seven months into this litigation. As Defendant argues, all the facts and circumstances that underlie that FAC (like the TAC) were well-known to Plaintiff for months (and occurred more than two years before Plaintiff filed even the original complaint). Yet Plaintiff is asking to make his *fifth* attempt to adequately plead his case. To the extent that the motion to dismiss the TAC raises new arguments not previously raised, that is likely at least partly because Plaintiff took four attempts to craft a pleading that allowed Defendant (and the Court) to understand the particular basis of those claims and has seemingly shifted the basis of certain claims from complaint to complaint.[10] Indeed, the Court (appropriately) already noted that it was "difficult not to infer a dilatory or even a vexatious motive" from Plaintiff's actions leading up to his request to file his corrected SAC – a pleading that was still deeply flawed and required (and received) yet another opportunity to amend. *See* [DE 48]. It is even more difficult to avoid that inference now, one more amendment (and one more request for

[10] Plaintiff blames Defendant's litigation choices for keeping this case in its pleading stage, including complaining that Defendant has sought to dismiss each version of the complaint and never filed an answer. [DE 87] at 10. Plaintiff's argument is not well-taken. It is Plaintiff's responsibility to adequately plead his claims with sufficient clarity, legal precision, and supporting allegations in accordance with Rule 8. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That Plaintiff's original, First Amended, and Second Amended Complaints failed to avoid the pitfalls of shotgun pleading and fairly apprise Defendant of the bases of Plaintiff's claims is not Defendant's fault. While Plaintiff may believe that his TAC adequately corrected this deficiency, Defendant was not obligated to simply accept that position or ignore believed Rule 12(b)(6) deficiencies in the TAC (including ones Defendant had repeatedly raised). Whether the TAC remains deficient remains to be decided. But Plaintiff can hardly blame Defendant for the case remaining in the pleading stage.

leave to even further amend) later. At the very least, even if Plaintiff has not acted with the intent to delay, it is hard not to conclude that his conduct to this point has caused undue delay in the proceedings.

For these reasons, Plaintiff's Motion for Leave is denied.

B. Motion for Sanctions

Plaintiff seeks sanctions[11] under Federal Rule of Civil Procedure 16(f) because Defendant filed a unilateral scheduling report, rather than the *joint* scheduling report required by the Court's order, and refused to confer with Plaintiff by telephone on their disputes over the schedule. Plaintiff asserts that Defendant, after providing its proposed schedule, insisted that Plaintiff send his competing proposal for any dates with which he disagreed and refused Plaintiff's repeated requests for a telephone conferral on disagreements. Defendant, for its part, asserts that it never refused to confer. Rather Defendant asserts it repeatedly sought, over the course of two weeks, for Plaintiff to provide his proposal to identify the specific disagreements on which the parties needed to confer, offered to be available for a telephone call thereafter, and only filed their unilateral scheduling report after Plaintiff's counsel indicated he did not have authority to agree to a report showing the parties' competing proposals.

"Rule 16(f) permits a district court to issue 'any just orders' if, among other things, a party fails to obey a scheduling or other pretrial order." *Yaffa v. Weidner*, 717 F. App'x 878, 883 (11th Cir. 2017) (citing Fed. R. Civ. P. 16(f)(1)(C)). The rule also requires the court to order a party, its attorney, or both to pay the reasonable expenses incurred due to any noncompliance with Rule 16

[11] Plaintiff's Motion for Sanctions also sought other relief, such as requiring Defendant to answer (rather than seek dismissal of) a future pleading, giving Plaintiff a time within which to file an amended complaint, and order the parties to confer and file a new joint scheduling report. Plaintiff withdrew his request for these forms of relief in his reply. [DE 104].

generally, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust. *Id.*; Fed. R. Civ. P. 16(f)(2). The rule accords district courts "broad discretion." *Yaffa*, 717 F. App'x at 883 (citing *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006)).

Here, the Court declines to award sanctions and wade into what amounts to a petty squabble between the parties over what should have been a routine exercise. The instant dispute is emblematic of the parties' inability to communicate throughout the proceedings thus far. Without going through an extensive recitation of the twenty pages of emails between the parties that Plaintiff attaches to his motion, it suffices to say that both parties are at least a little bit wrong. Plaintiff clearly should have responded to Defendant's requests to provide proposed scheduling dates far in advance of the afternoon on the day the joint scheduling report was due. As Defendant's argue, at least it would have laid the groundwork for a focused conferral discussion and avoided the last-minute scramble evidenced by the parties' communications. Defendant, for its part, should have more concretely identified a time for the parties to actually speak to one another (as true substantive conferral usually requires). But given the circumstances described in the motion, the response, the reply and their numerous attachments, it appears that Plaintiff is at least as much at fault for the parties not having a joint filing (even one presenting competing deadline proposals) by the close of business on the day it was due. Thus, even if the unilateral filing did violate the Court's order, the conduct was substantially justified and an award of expenses would be unjust.

The Court also declines Plaintiff's invitation (made in his reply) to simply enter no new schedule. Rather, the parties will be directed to go back and accomplish what professionals before this Court (even in the most contentious of cases) are routinely capable of doing. It is apparent

from the emails attached to the Motion for Sanctions, as well as much of the back-and-forth briefing on the Motion, that one of the biggest (and perhaps *the* biggest) stumbling blocks in the parties' conferral (or lack thereof) was a disagreement over Plaintiff's desire to set a new deadline for amendment of pleadings and further amend his TAC. Since this order has now addressed that issue, the parties should be able to figure out a proposed schedule. Furthermore, since discovery remains stayed, with Defendant's motion to dismiss the TAC still pending, the proposed schedule Defendant submitted may no longer be feasible. Given the stay of discovery, the parties should craft a proposed schedule that pegs deadlines to the date of the Court's order on Defendant's motion to dismiss the TAC.

Therefore, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Leave [DE 87] is **DENIED.**
2. Plaintiff's Motion for Sanctions [DE 98] is **DENIED.**
3. By **October 6, 2026**, **at 5:00 p.m.,** the parties shall prepare and file a joint scheduling report, as required by Local Rule 16.1. In preparation of the report, the parties shall, by **September 29, 2026**, exchange initial proposals for pretrial deadlines and trial dates and the other content of the joint scheduling report. Thereafter, to the extent the parties' proposals disagree, the parties shall meet and confer, in person, by video-conference, or by telephone, in a genuine, good-faith effort to resolve their disputes over the content of the joint scheduling report.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of September 2026.

Jared Strauss

**Jared M. Strauss**
**United States Magistrate Judge**